**Not for Publication**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |
|---|---|
| : | |
| CONSERVATION FORCE, ROBERT : | Civil Action No. 16-04124 (FLW)(LHG) |
| VIDEN, JR., PETER HEFFERAN, CRAIG : | |
| DEAR, VINCENT JAMES SPINELLA, : | **OPINION** |
| RICHARD NORDLING, GARDEN : | |
| STATE TAXIDERMIST ASSOCIATION, : | |
| and JOHN JANELLI d/b/a JANELLI : | |
| TAXIDERMY, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| CHRISTOPHER S. PORRINO, : | |
| ATTORNEY GENERAL OF THE STATE : | |
| OF NEW JERSEY, and BOB MARTIN, : | |
| COMMISSIONER OF THE NEW JERSEY : | |
| DEPARTMENT OF ENVIRONMENTAL : | |
| PROTECTION, : | |
| : | |
| Defendants. : | |
| : | |

_____

**Hon. Freda L. Wolfson, U.S.D.J.:**

Before the Court is the motion of Plaintiffs Conservation Force, Robert Viden, Jr., Peter

Hefferan, Craig Dear, Vincent James Spinella, Richard Nordling, Garden State Taxidermist

Association, and John Janelli d/b/a Janelli Taxidermy (collectively "Plaintiffs"), for an award of

attorneys' fees following this Court's August 29, 2016 entry of a consent Order and Judgment

finding elements of N.J.S.A. 23:2A-6.1 (the "Act") to be preempted under the Endangered

Species Act of 1973, 16 U.S.C. §§ 1531-1543 (the "ESA"), and dismissing, without prejudice

Plaintiffs' claim under 42 U.S.C. § 1983. For the reasons set forth below, the Court finds that

Plaintiffs have failed to identify any statutory authority entitling Plaintiffs to fee-shifting and that

a discretionary exercise of this Court's equitable authority to award attorneys' fees is not warranted in this case. Plaintiffs' motion for attorneys' fees is, therefore, denied.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In March 2016, the New Jersey Legislature passed a bill prohibiting, *inter alia*, the possession, import, export, and transport of parts or products of the African elephant, leopard, lion, and black and white rhino. September 28, 2016 Declaration of John J. Jackson, III, ¶ 9 ("Jackson Decl."). On April 20, 2016, Plaintiff Conservation Force sent a letter and supporting information packet to New Jersey Governor Chris Christie in opposition to the bill, arguing, among other grounds, that the bill would be preempted by the ESA. *Ibid.* Governor Christie vetoed the bill and submitted suggestions to the Legislature, without addressing the preemption issue. *Ibid.* The Legislature accepted Governor Christie's suggestions, and he signed the bill into law on June 1, 2016. *Ibid.*

On June 30, 2016, Conservation Force, on behalf of itself, the Garden State Taxidermists Association, and individual members of those organizations, served Governor Christie, and U.S. Secretary of the Interior Sally Jewell, a Sixty-Day Notice of Intent to Sue (the "Notice") for alleged violation of the ESA. November 10, 2016 Declaration of John R. Renella, ¶ 4 ("Renella Decl."); Jackson Decl., ¶ 11.

On July 8, 2016, Plaintiffs filed the two-count Complaint in this action. Renella Decl., ¶ 5; Jackson Decl., ¶ 12. In Count I, Plaintiffs raised a claim under the Supremacy Clause of the United States Constitution that the Act was preempted by the ESA. Compl. ¶¶ 105-11. In Count II, Plaintiffs raised a claim for violation of unspecified constitutional rights under 42 U.S.C. § 1983. *Id.* at ¶¶ 112-17. On July 13, 2016, the Court conducted a conference call with Plaintiffs' and Defendants' counsel. During the call, Defendants' counsel questioned whether Plaintiffs' suit was premature given that it had not yet been sixty days since Plaintiffs' served their Notice.

Renella Decl., ¶ 6. In response, Plaintiffs' counsel indicated that the Notice concerned a different matter. Renella Decl., ¶ 7. Also on the July 13 call, the Court, after a preliminary review of Plaintiffs' papers, converted Plaintiffs' pending application for an order to show cause into a motion for summary judgment on Count I of Plaintiffs' Complaint only. *See* Dkt. No. 10, July 13, 2016 Text Order. The Court further set a briefing schedule that Defendants' opposition would be due on August 1, 2016, and Plaintiffs' reply brief would be due on August 8, 2016.

On August 1, Defendants filed their Memorandum in Opposition, in which they conceded that the Act was preempted by the ESA in certain circumstances and expressed the State of New Jersey's intent not to enforce the Act in a manner which would conflict with federal permits. The Court requested that the parties' counsel confer to determine whether, given the representations made in Defendants' Opposition, there was still a justiciable issue in the case and encouraged the parties to pursue settlement.

Defendants' and Plaintiffs' counsel participated in a call on August 2, 2016. Renella Decl., ¶ 10. Defendants represented that they would not take enforcement action against someone acting pursuant to a federal permit or exemption under the ESA. *Ibid.* Plaintiffs' counsel requested that the parties sign a consent order to that effect, and Defendants' counsel agreed to take the proposal under consideration. *Ibid.* As part of their discussions, Plaintiffs offered to waive any claim for attorneys' fees in order to expedite resolution of the case. Jackson Decl., ¶ 13.

On August 3, Plaintiffs' counsel emailed Defendants' counsel a draft consent judgment. Defendants' counsel reviewed the draft and called Plaintiffs' counsel on August 4, 2016. Renella Decl., ¶ 11. During the August 4 call, Defendants' counsel indicated that Plaintiffs' proposed language regarding the scope of preemption was broader than that to which Defendants

had agreed to in their Opposition. Plaintiffs also wanted Defendants to promulgate regulations incorporating the consent judgment's terms. Renella Decl., ¶ 12. Defendants' counsel informed Plaintiffs' counsel that Defendants could not agree to Plaintiffs' proposed terms for a consent judgment, and Plaintiffs' counsel indicated that they would proceed with briefing the motion for summary judgment on Count I. Renella Decl., ¶ 13; Jackson Decl., ¶ 13.

Plaintiffs filed their reply brief on August 8, 2016. The parties were called for another telephone conference with the Court on August 9. The Court suggested that, given the position of the parties in briefing, it appeared a consent order was possible, holding that some parts of the Act were preempted and others were not preempted. The Court requested that the parties attempt to draft such an order. Plaintiffs' counsel volunteered to draft the order. Renella Decl., ¶ 15.

Plaintiffs' counsel emailed Defendants' counsel a draft of the order later in the day on August 9, 2016. Defendants' counsel provided comments and suggested changes to the draft by email on August 15. Renella Decl., ¶ 16. On August 16, Plaintiffs' counsel posed questions to Defendants' counsel by email regarding the comments and edits. Defendants' counsel responded to Plaintiffs' counsel by email on August 17. *Id.* at ¶ 17. In their August 17 communications with Plaintiffs' Counsel, Defendants' counsel requested that language be included in the consent order dismissing Count II. *Id.* at ¶ 18 and Ex. B.

On August 18, Plaintiffs' counsel emailed Defendants' counsel a revised draft of the proposed consent order. In response to Defendants' counsel's request to add language dismissing Count II, Plaintiffs' counsel wrote:

> Plaintiffs have no intent to pursue Claim II at this time. But in an abundance of caution and since the claim was not briefed, we do not wish to dismiss it with prejudice either. We have revised the draft order to grant the motion on Count I and to dismiss Count II without prejudice.

*Id.* at Ex. B. Plaintiffs' and Defendants' counsel discussed the draft order by telephone on August 23 and August 24. The parties finalized the order on August 24. Renella Decl., ¶ 19. On August 26, 2016, Plaintiffs' counsel submitted the proposed consent order to the Court for filing. The court entered the Order and Judgment on August 29, 2016.

One month later, On September 28, 2016, Plaintiffs filed the present motion for attorneys' fees and costs, claiming statutory entitlement to fee-shifting under 6 U.S.C. § 1540(g) and 42 U.S.C. § 1988, and requesting, in the alternative, that the Court exercise its equitable powers to awards fees in this case.

## II. STANDARD OF REVIEW

"Under the 'American Rule,' parties to litigation are to pay their own attorneys' fees, absent statutory authority and a court order providing otherwise." *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 231 (3d Cir. 2008) (quoting *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't. of Health and Human Resources,* 532 U.S. 598, 602 (2001)). As relevant to this case, Congress has provided statutory authorization for fee-shifting in citizen suits under the ESA. Specifically, the ESA provides that "[t]he court, in issuing any final order in any suit brought pursuant to paragraph (1) of [§ 1540(g)], may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Congress has also authorized fee awards in § 1983 actions for the violation of constitutional rights. "In civil rights cases . . . courts 'may allow the prevailing party . . . a reasonable attorney's fee.'" *People Against Police Violence*, 520 F.3d at 232 (quoting 42 U.S.C. § 1988(b)). "Pursuant to this authority, the 'prevailing party' in such cases is normally awarded attorneys' fees, absent special

circumstances." *Id.* (quoting *Truesdell v. Philadelphia Hous. Auth.,* 290 F.3d 159, 163 (3d Cir. 2002)).

Parties are considered "prevailing parties" if "they succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.,* 287 F.3d 267, 271 (3d Cir. 2002) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)) (internal quotation marks omitted). To "succeed" under this standard, a party must achieve a "court-ordered 'change in the legal relationship between the plaintiff and the defendant.'" *Buckhannon,* 532 U.S. at 604 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792 (1989)). Therefore, courts may not award fees based on a "catalyst theory;" a plaintiff does not become a "prevailing party" solely because his lawsuit causes a voluntary change in the defendant's conduct. In that situation, the change in legal relationship lacks the requisite "judicial imprimatur." *Id.* at 601, 605.

## III. ANALYSIS

In the present motion, Plaintiffs seek an award of attorneys' fees on three alternative bases. First, Plaintiffs contend they are entitled to attorneys' fees as a prevailing party under the citizen suit provision of the ESA, 6 U.S.C. § 1540(g). Second, Plaintiffs' contend that they are entitled to attorneys' fees as a prevailing party on a federal constitutional claim, pursuant to 42 U.S.C. § 1988. Third and finally, Plaintiffs contend that the Court should exercise its discretion to award attorneys' fees to Plaintiffs, pursuant to the Court's inherent equitable powers. As explained below, neither statutory provision provides for fee-shifting in this case, and an exercise of the Court's equitable powers is not warranted.

## A. 16 U.S.C. § 1540(g)(4)

Plaintiffs contend that they may be awarded attorneys' fees as a "prevailing party" under the citizen suit provision of the ESA. Although the parties have extensively briefed the issue of

whether Plaintiffs may qualify as a "prevailing party" under the statute on numerous grounds, the

Court first addresses the threshold question of whether this matter in fact involved a "citizen

suit" for which the ESA provides attorneys' fee awards. The ESA authorizes an award of

attorneys' fees in only certain, limited circumstances.

> (4) The court, in issuing any final order in any suit brought pursuant to paragraph (1) of
> this subsection, may award costs of litigation (including reasonable attorney and expert
> witness fees) to any party, whenever the court determines such award is appropriate.

16 U.S.C. § 1540(g)(4). 16 U.S.C. § 1540(g)(1), the "paragraph (1)" mentioned above, in turn

authorizes three types of citizen suits under the ESA. Two of the three types of suits may only be

brought against the Secretary of the Interior, who is not a defendant in this case. Accordingly,

here, Plaintiffs' case could only be brought as a citizen suit under § 1540(g)(1)(A), which

provides in relevant part:

> (g) Citizen suits
>
> (1) Except as provided in paragraph (2) of this subsection any person may commence a
> civil suit on his own behalf--
>
> (A) to enjoin any person, including the United States and any other governmental
> instrumentality or agency (to the extent permitted by the eleventh amendment to the
> Constitution), who is alleged to be in violation of any provision of this chapter or
> regulation issued under the authority thereof.

This authorization to sue is limited by § 1540(g)(2), the "paragraph (2)" mentioned above, which

provides, in relevant part, that:

> (2)(A) No action may be commenced under subparagraph (1)(A) of this section--
>
> (i) prior to sixty days after written notice of the violation has been given to the Secretary
> [of the Interior], and to any alleged violator of any such provision or regulation.

16 U.S.C. § 1540(g)(2)(A)(i). Accordingly, plaintiffs are required to provide sixty days' notice to

both the Secretary of the Interior and any other defendants before bringing a citizen suit under

the ESA.

"The notice requirement under [the] ESA is jurisdictional." *Virgin Islands Tree Boa v. Witt*, 918 F. Supp. 879, 895 (D.V.I.), *aff'd sub nom. Virgin Islands Tree Boa, (Epicrates Monensis Granti) v. Witt*, 82 F.3d 408 (3d Cir. 1996) (citations omitted). *See also Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 464 (3d Cir. 1997) (observing the Court's prior precedent that dismissal of ESA claims is "compelled" by "failure to satisfy the statute's notice requirements"). The Third Circuit has therefore observed that § 1540(g) "and its accompanying regulations . . . must be given effect, and as we read them, they mandate that, . . . notice . . . [i]s required before filing suit." *id.* at 465. In affirming the district court below, the Third Circuit in *Hawksbill* concluded:

> Plaintiffs, who were represented by counsel at all times, failed to comply with this requirement. On this basis, the district court noted that, even if plaintiffs could establish sufficient evidence to merit the issuance of injunctive relief . . . , 'this court would dismiss these claims for failure to comply with the ESA's notice requirement.' *Although the district court did not formally dismiss plaintiffs' claims . . ., it should have done so*."

*Ibid.* (emphasis added). Accordingly, in this Circuit, the ESA's notice requirement imposes a jurisdictional threshold, mandating dismissal of actions in which the plaintiff has failed to provide adequate notice.

The Complaint in this case contains two counts, neither of which on its face purports to be a citizen suit under the ESA: Count I raises a claim under the Supremacy Clause of the United States Constitution, and Count II raises a claim under 42 U.S.C. § 1983. Even granting, as the Court does for the purposes of this motion, that either or both of these claims could be properly brought as citizen suits under the ESA under some circumstances, it is evident in the case at bar that they were not. Firstly, Plaintiffs plainly failed to comply with the ESA's notice requirements. It is undisputed that Defendants were served with Plaintiffs' Sixty-Day Notice of Intent to Sue on June 30, 2016. Renella Decl., ¶ 4; Jackson Decl., ¶ 11. Plaintiffs filed the

Complaint in this case just over a week later, on July 8, 2016. Pursuant to 16 U.S.C. § 1540(g)(2)(A)(i), therefore, "no action" by Plaintiffs could have been "commenced under" the citizen suit provision of the ESA in their July 8 Complaint. *See Hawksbill*, 126 F.3d at 464-65.

Secondly, from the very early stages of this case, the parties recognized that Plaintiffs could not raise and were not raising a citizen suit under the ESA, precisely because of Plaintiffs' failure to comply with the notice requirements. In the Court's July 13, 2016 conference call with the parties, Defendants' counsel raised the issue of whether Plaintiffs' suit under the ESA might be barred because Plaintiffs' 60-day notice had been served on Defendants just one week prior to the filing of Plaintiffs' Complaint. Renella Decl., ¶ 7. In response, Plaintiffs' counsel represented that the ESA's notice requirement did not provide a barrier to the present suit, because the 60-day notice related to a different matter than that raised in the Complaint. *Ibid.* In doing so, Plaintiffs made clear that they intended to proceed on the claims raised in the Complaint, including Count I, on some jurisdictional basis other than the ESA. Specifically, in their July 8, 2016 Complaint, Plaintiffs asserted that "[t]he Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), because the claims arise under § 6 of the ESA, 16 U.S.C. § 1535(f)), the U.S. Constitution, U.S. Const. art. VI, cl. 2 [the Supremacy Clause], and 42 U.S.C. § 1983." Compl. ¶ 13. In the telephonic conference, Plaintiffs' counsel effectively disclaimed jurisdiction under the ESA in response to Defendants' counsel's concerns about the lack of an appropriate 60-day notice prior to the filing of the Complaint.[1] From July 13 forward, then, the only bases of the Court's jurisdiction over this matter could have been the Supremacy Clause and

---

[1] In their briefing for this very motion, Plaintiffs again conceded that "Plaintiffs did not rely on the ESA for jurisdiction" in this case. Reply, 3.

§ 1983. As explained in Section III(B), *infra*, § 1983 cannot provide jurisdiction for Count I, a federal preemption claim.

The Supremacy Clause itself, however, provides jurisdiction over private suits, like Count I, bringing facial challenges to state laws on the basis of their conflict with federal law. The Supreme Court clearly held as much in *Shaw v. Delta Air Lines,* 463 U.S. 85, 96 n. 14 (1983), where it concluded that "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *See also Lewis v. Alexander*, 685 F.3d 325, 345–46 (3d Cir. 2012) ("Supreme Court precedent establishes that the Supremacy Clause creates an independent right of action where a party alleges preemption of state law by federal law."). The Third Circuit has long abided by this rule, holding in *St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S.V.I.,* 218 F.3d 232, 240 (3d Cir. 2000), that a "state or territorial law can be unenforceable as preempted by federal law even when the federal law secures no individual substantive rights for the party arguing preemption . . . . The Supreme Court has recognized that such a challenge presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." The Third Circuit reaffirmed the continuing authority of *St. Thomas-St. John Hotel*, as recently as 2012, in its decision in *Lewis*, 685 F.3d at 346.

In this case, after Plaintiffs acknowledged the inadequacy, and indeed the inapplicability of their 60-day notice in this case on July 13, there was no possibility of a citizen suit claim in this action on which Plaintiffs could have prevailed. Therefore, this Court instead exercised jurisdiction over Count I solely on the basis of the Supremacy Clause, not the ESA. In the

absence of a citizen suit under the ESA, § 1540(g)(4) cannot provide a basis for an award of attorneys' fees to Plaintiffs. Stated simply, Plaintiffs have failed to provide any authority for the proposition that this Court may grant attorneys' fees for a statutory claim over which this Court lacked jurisdiction. The jurisdiction of this Court over Count I has been premised exclusively on the Supremacy Clause of the United States Constitution from the earliest days of this suit, and this Court entered the consent Order and Judgment in this case under that jurisdictional authority.

In reply, Plaintiffs do not dispute that they failed to comply with the ESA's notice requirement, but instead argue that they may be entitled to attorneys' fees under the citizen suit provision, "because the case turned on ESA preemption, although the ESA did not yet provide jurisdiction." Reply, 2. Plaintiffs' briefing does not expand on this bald statement, but instead merely asserts that the ESA was "central" to the issues in the case, and offers a series of non-binding, out-of-circuit cases for the proposition that other district courts have awarded attorneys' fees under the ESA, even where no live ESA claim remained in the case. *Ibid*. The Court finds each of these cases clearly distinguishable from the case at bar, and therefore unpersuasive that Plaintiffs may use provisions of the ESA to secure fees in a case decided under the Supremacy Clause.

In *Friends of Animals v. Salazar*, 696 F. Supp. 2d 16 (D.D.C. 2010), the plaintiff brought a suit for a declaratory judgment and injunctive relief against, *inter alia*, the Secretary of the Interior (i) for failure to make a 90-day finding on plaintiff's endangered-species petition and (ii) for missing the 12-month deadline for making another finding on plaintiff's petition. *Id.* at 18. The Court dismissed plaintiff's 12-month claim for failure to provide defendants with proper notice under the ESA, but found plaintiff's suit to have prompted defendants' ultimate issuance of the 90-day finding. The court, relying on the law of its circuit, which this court observes

would not have been binding on this Court in any event, found plaintiff to be a prevailing party under the ESA on its 90-day claim, and so entitled to attorneys' fees. *Ibid.*

Unlike this case, however, defendants there "d[id ] not dispute that Plaintiff [wa]s entitled to reasonable fees for the filing of its 90–day finding claim," arguing only that the fees requested were unreasonable. *Id.* at 18. There was thus no issue in *Friends of Animals* as to whether a valid ESA claim existed; defendants conceded that one did. Furthermore, directly counter to Plaintiffs' argument in this case, the *Friends of Animals* court made plain that only the claim for which defendants were provided proper ESA notice was eligible for an award of attorneys' fees. The Court explained that:

> Plaintiff's claim regarding Defendants' failure to issue a 12–month finding is distinct from its claim regarding a 90–day finding and, in fact, the 12–month claim was not even properly part of this lawsuit. Plaintiff therefore may recover fees for work expended on the notice letter and Complaint to the extent that work was related to its 90–day finding claim, but not for work related to its 12–month finding claim.

*Id.* at 19. The court was clear that the claim for which no notice had been provided was "not even properly part" of the case, and, therefore, that no attorneys' fees would be awarded for that claim.

Similarly, in *S. Yuba River Citizens League & Friends of River v. Nat'l Marine Fisheries Serv.*, No. 06-CV-2845, 2012 WL 1038131 (E.D. Cal. Mar. 27, 2012), there was no question that the "[p]laintiffs' fee request [wa]s pursuant to the Endangered Species Act citizen suit provision, 16 U.S.C. § 1540(g)(4)." Plaintiff brought a claim for a "take" of listed fish species in violation of the ESA, and the defendant did not challenge that proper notice had been given. *Id.* at *1-2, aff'd sub nom. S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 581 F. App'x 693 (9th Cir. 2014). Simply put, the critical, and threshold inquiry of whether a citizen suit had been properly brought was not before the court in *S. Yuba River*.

Finally, the question before the district court in *Conservation Law Found. of New England, Inc. v. Watt*, 654 F. Supp. 706 (D. Mass. 1984), was whether plaintiff's counsel could recover attorneys' fees for work on a live claim in the case for which only a co-plaintiff, but not plaintiff itself, could recover. The district court found that the ESA claims in that case "all involved a common core of facts and were based on related legal theories," and therefore plaintiff could recover attorneys' fees for work performed on a claim belonging to co-plaintiff. *Id.* at 707. There was no suggestion that co-plaintiff's claim was not properly noticed or otherwise not legitimately a part of the case. Here, by contrast, Plaintiffs seek to recover for an alleged ESA claim for which there was no jurisdiction due to the absence of a proper ESA notice, and which, therefore, was not part of the case before the Court. Instead, the claim before the Court in Count I was bought solely under the auspices of the Supremacy Clause, not the ESA. In the absence of any persuasive authority to the contrary therefore, Plaintiffs' arguments do not disturb this Court's finding that the ESA's citizen suit provision provides no basis for the award of attorneys' fees in this case.

**B. 42 U.S.C. § 1988(b)**

In adjudicating Plaintiffs' claim for attorneys' fees under the ESA, the question posed to the Court was whether there had ever been a proper ESA citizen suit before the Court, which might entitle Plaintiffs to fees under the statute. As explained above, the Court has found that there was no such citizen suit due to Plaintiffs' failure to comply with the ESA's notice requirements, and that the claim was simply preempted under the Supremacy Clause in Count I. By contrast, in evaluating Plaintiffs' claim for attorneys' fees under 42 U.S.C. § 1988(b), there is no question that Plaintiffs at least initially raised a claim under § 1983, which could entitle Plaintiffs to fees under § 1988. Count II of the Complaint clearly purports to bring an action

under § 1983. The question before the Court on Plaintiffs' present motion under § 1988, therefore, is whether Plaintiffs are a "prevailing party" entitled to attorneys' fees for the purposes of their § 1983 claim.

This matter was resolved through a consent order and judgment, drafted jointly by the parties and entered by this Court. In that Order and Judgment, the Court ruled on Count I, *inter alia*, that by action of the Supremacy Clause of the United States Constitution, the Act was preempted by and void under the ESA to the extent it prohibited any activity that is authorized pursuant to an exemption or permit provided for in the ESA. In addition, I dismissed Count II, Plaintiffs' § 1983 claim, without prejudice. As noted above, parties are considered "prevailing parties" if "they succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *J.O. ex rel. C.O.,* 287 F.3d at 271. To "succeed" under this standard, a party must achieve a "court-ordered change in the legal relationship between the plaintiff and the defendant." *Buckhannon,* 532 U.S. at 604 (quotation omitted). In Count I, Plaintiffs' preemption claim, Plaintiffs clearly succeeded on a significant issue in the litigation and achieved some benefit to the parties bringing the suit as reflected in this Court's August 29 Order and Judgment.

The difficulty for Plaintiffs, however, is that § 1988 does not authorize awards of attorneys' fees in preemption cases, like that brought in Count I. Although the Third Circuit has not addressed the issue, every circuit court to have considered the question has found that "preemption of state law under the Supremacy Clause—being grounded not on individual rights but instead on considerations of power—will not support an action under § 1983, and will not, therefore, support a claim for attorneys' fees under § 1988." *Segundo v. City of Rancho Mirage,* 813 F.2d 1387, 1394 (9th Cir. 1987). *See Planned Parenthood of Houston & Se. Texas v.*

*Sanchez*, 480 F.3d 734, 738 (5th Cir. 2007) ("Plaintiffs' Supremacy Clause claim was not

actionable under § 1983. It follows that their Supremacy Clause claim, standing alone, would not

support an award of attorney's fees under § 1988."); *Md. Pest Control Assoc. v. Montgomery*

*County,* 884 F.2d 160, 163 (4th Cir.1989) ("[F]ederal preemption of local ordinances pursuant to

the Supremacy Clause is not actionable under Section 1983. Therefore, there can be no award of

attorney's fees under Section 1988."); *Boston & Me. Corp. v. Town of Ayer,* 330 F.3d 12, 18 (1st

Cir.2003) (same); *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 792 (6th Cir. 1996) (same).[2]

In the absence of guidance from the Third Circuit, this Court adopts the consensus view that

prevailing on a federal preemption claim alone cannot give rise to an award of attorneys' fees

under § 1988.

In their motion, however, Plaintiffs argue that, where, as here, Plaintiffs raise both a

federal preemption claim (Count I) and a separate § 1983 claim based on the same nucleus of

operative facts (Count II), courts are empowered to award attorneys' fees under § 1988 for both

the preemption claim and the § 1983 claim, even when the Court has found Plaintiffs to have

prevailed on the preemption claim only.[3] In support of this counterintuitive argument, Plaintiffs

rely almost exclusively on the unreported decision of the Middle District of Pennsylvania in

*Lozano v. City of Hazleton*, No. 3:06CV1586, 2015 WL 5895545 (M.D. Pa. Oct. 6, 2015). In

---

[2] Although the Supreme Court has not yet ruled on this issue, its holding in *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989), suggests that it would reach a similar conclusion. There, the Supreme Court held that the Supremacy Clause, of its own force, does not create rights enforceable under § 1983, and therefore "it would obviously be incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority." *Id.* at 107-08.

[3] This Court notes that Defendants disagree that Plaintiffs have indeed stated a valid, separate § 1983 claim, but, for the purposes of this motion, the Court will assume that Plaintiffs have done so. If the Court were to have found that Plaintiffs failed to state a § 1983 claim, then attorneys' fees would clearly not be warranted in this matter because, as noted above, § 1988 does not provide for fee shifting in cases brought under the Supremacy Clause alone.

*Lozano*, the district court found that defendant's municipal ordinances were preempted by federal immigration law and that the ordinances violated plaintiffs' Fourteenth Amendment constitutional right to due process. *Id.* at *1. The Third Circuit affirmed on the basis of federal preemption only. Plaintiffs then moved in the district court for an award of attorneys' fees under § 1988. Concerning the fees incurred in the appeal before the Third Circuit, defendant argued that plaintiffs had prevailed only on their federal preemption claim, and therefore were not entitled to fees because § 1988 does not provide for fee shifting in preemption cases. The Middle District of Pennsylvania accepted, *arguendo*, that the Third Circuit would agree with, *inter alia*, the Sixth Circuit in *Gustafon* and the Fifth Circuit in *Planned Parenthood* that federal preemption claims do not fall under the attorneys' fees provision of § 1988. The district court, however, did not find this an absolute bar to a fee award in the case, holding

> Where, however, a case involves both federal preemption issues and civil rights/constitutional issues and the plaintiff prevails on the federal preemption claim, the plaintiff may recover fees for both if the claims arise from a "common nucleus of operative facts". . . . The Third Circuit has explained as follows:
>
> > We have previously addressed situations where a plaintiff brought a § 1983 claim that supports a grant of attorney's fees and another claim that does not, and the court found in favor of the plaintiff on the non-fee bearing claim but did not address the § 1983 claim. Recognizing that courts will often justifiably refrain from addressing a constitutional question where it can be avoided, we have held that such a plaintiff may obtain attorney's fees even though the § 1983 claim was not decided provided that 1) the § 1983 claim of constitutional deprivation was substantial; and 2) the successful pendant claims arose out of a common nucleus of operative facts.

*Lozano*, 2015 WL 5895545, at *6 (quoting *Planned Parenthood*, 480 F.3d at 739). The *Lozano* court went on to conclude:

> Stated differently, the law provides that where a plaintiff prevails in a case raising both constitutional claims that support an attorney's fee award and claims that do not support attorney's fees, fees can be awarded even if the court does not address the constitutional claim. In such situations, fees can be awarded when the unaddressed claim of

constitutional deprivations are substantial and arise with the pendant non-constitutional claims from a common nucleus of operative fact.

*Id.* at *6 (quotation omitted). Under this standard, the district court found that "[i]n the instant case, the constitutional claims and the preemption claims all arose from a common nucleus of operative facts–namely the defendant's ordinances," and found that the claims were "substantial." *Id.* at *7.

Here, Plaintiff contends that the facts of this case are similar to *Lozano*, and that the Court should therefore apply the "substantial" and "common nucleus of operative facts" test to find a fee award warranted here. The *Lozano* court, however, was mistaken as to the controlling law, and, even had it not been, the different procedural posture of this case would prevent a fee award under the standard applied in *Lozano*.

Firstly, the *Lozano* court mistakenly treated the decision of the Fifth Circuit in *Planned Parenthood* as controlling precedent, when its effect in this circuit is only persuasive at best. Critically, the *Lozano* court misattributed the block quotation setting forth the substantial and common nucleus of operative facts test as coming from an opinion of the Third Circuit, when it was drawn directly from the holding of the Fifth Circuit in *Planned Parenthood*. Plaintiffs have provided no authority suggesting that the Third Circuit would adopt the Fifth Circuit's rule, which, despite the Fifth Circuit's arguments to the contrary, would appear to undermine the consensus of other circuits, which have found that parties prevailing on the basis of preemption alone may not recover fees under § 1988.

More importantly, however, even were this Court to apply the Fifth Circuit's standard in this case, it would not entitle Plaintiffs to an award of fees under § 1988. As explained, above, the *Lozano* opinion upon which Plaintiff heavily relies adopted the standard of the Fifth Circuit in *Planned Parenthood*. In that case, the district court below had granted plaintiffs a preliminary

injunction on the basis of *both* federal preemption *and* a violation of plaintiffs' right to privacy under the Due Process Clause of the Fourteenth Amendment. *Id.* at 738. On appeal, the Fifth Circuit readily found that fees under § 1988 were warranted for plaintiffs' successful § 1983 claim. Turning to the fees requested on plaintiffs' preemption claim, the circuit court observed:

> We have previously addressed situations where a plaintiff brought a § 1983 claim that supports a grant of attorney's fees and another claim that does not, *and the court found in favor of the plaintiff on the non-fee bearing claim but did not address the § 1983 claim. Recognizing that courts will often justifiably refrain from addressing a constitutional question where it can be avoided, we have held that such a plaintiff may obtain attorney's fees even though the § 1983 claim was not decided "provided that 1) the § 1983 claim of constitutional deprivation was substantial; and 2) the successful pendant claims arose out of a common nucleus of operative facts."* . . . Given our willingness to allow attorney's fees based on a successful pendant claim where the § 1983 claim was not addressed by the court, it would make no sense to deny attorney's fees for either claim where the § 1983 claim was also successful. Therefore, where a plaintiff prevails on both a § 1983 claim and a Supremacy Clause claim that are based on a "common nucleus of operative facts," the plaintiff may recover attorney's fees for both claims.
>
> Here, because Plaintiffs' Supremacy Clause and unconstitutional condition claims arise from a common nucleus of operative facts, Plaintiffs would be entitled to attorney's fees on both claims if they could show that they qualify as "prevailing parties" on the basis of their success in obtaining a preliminary injunction from the district court.

*Id.* at 739 (emphasis added). It was this language upon which the Court relied in *Lozano*. In context, however, it is clear that in *Planned Parenthood*, the Fifth Circuit held that where a court is presented with both a federal preemption and a § 1983 claim, and determines, in the interest of constitutional avoidance, to grant relief on the preemption claim only, attorneys' fees for both claims may be recoverable under § 1988. Although this Court does not necessarily agree with the Fifth Circuit's holding, the logic of its position is evident: where a plaintiff presents two live, and potentially meritorious claims for relief to the court, one fee-bearing and the other not, and a court doctrine, like constitutional avoidance, leads the court on its own initiative to rule in plaintiff's favor on only the non-fee-bearing claim, without reaching the fee-bearing claim, the

plaintiff should not be penalized by cutting off access to § 1988 fee-shifting. Such logic does not apply here.

In this matter, the court entered judgment partially in favor of Plaintiffs on Plaintiffs' Count I preemption claim and dismissed Plaintiffs' Count II § 1983 claim, without prejudice, on the basis of a consent Order and Judgment submitted jointly by the parties. Plaintiffs, accordingly, voluntarily dismissed their § 1983 claim before it was ever fully briefed to or considered by this Court, as Plaintiffs' counsel made clear in his August 18, 2016 e-mail to Defendants' counsel concerning the draft consent order. Renella Decl., Ex. B ("Plaintiffs have no intent to pursue Claim II at this time" "the claim was not briefed"). It would thus be incongruous to permit Plaintiffs to consent to the voluntary dismissal of their § 1983 claim without prejudice, and nevertheless hold that, because Plaintiffs obtained some relief on their Count I preemption claim by the same consent order, they are a prevailing party entitled to attorneys' fees under § 1988.

Moreover, the dismissal of Plaintiffs' § 1983 claim was, by agreement, without prejudice to their ability to refile. Plaintiffs have not provided, and this Court has not identified any case in which a plaintiff has been found to be a prevailing party entitled to attorneys' fees on the basis of a claim that the plaintiff voluntarily dismissed without prejudice. In short, the procedural posture of the case before this Court in entering the consent Order and Judgment was vastly different than that described by the Fifth Circuit in *Planned Parenthood*. This Court was not presented with two live claims, of which it chose only one on which to enter judgment, mooting the other; rather, only one claim, Plaintiffs' Count I preemption claim was ever finally adjudicated by this Court, and Plaintiffs made no effort to pursue their § 1983 claim in this case. Accordingly, because Plaintiffs prevailed in this action on their Count I preemption claim only, because

federal preemption claims brought independently under the Supremacy Clause do not provide a basis for the recovery of attorneys' fees under § 1988, and because Plaintiffs have provided no authority showing that Plaintiffs' voluntarily dismissed § 1983 claim may provide an alternative basis for fee shifting, § 1988 does not provide statutory authority for an award of attorneys' fees in this case.

## C. The Court's Equitable Authority

"Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4–5 (1973). The Supreme Court has identified two circumstances in which the exercise of the courts' equitable powers is warranted. "Firstly, attorneys' fees may be appropriate where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 5 (quotation omitted). "In this class of cases, the underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." *Ibid*.

Secondly, attorneys' fees may be appropriate where "plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *Ibid.* (citation omitted). "'Fee shifting' is justified in these cases, not because of any 'bad faith' of the defendant but, rather, because (t)o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Id.* at 5-6 (quotations omitted) (alteration in original).

Over time, these two exceptions to the American rule outlined in *Hall* have become known in the Third Circuit as the "bad faith" exception and the "common benefit doctrine" respectively. The Third Circuit has held that in order for the district court to properly exercise its discretion under the bad faith exception, "the district court must balance the equities between the parties . . . . Thus, a district court may, in its discretion, refuse to award attorney's fees even where it finds the existence of bad faith, if, in balancing the equities, it nevertheless determines that an award in a particular case would not serve the interests of justice." *Perichak v. Int'l Union of Elec. Radio & Mach. Workers, Local 601, AFL-CIO*, 715 F.2d 78, 80 (3d Cir. 1983). The Third Circuit has further provided a two-step inquiry implementing the balancing test. "First [a court] must . . . determine[ ] whether the plaintiff's action was brought in 'bad faith.' If it was not, no fees under the 'bad faith' exception may be awarded. If, however, a finding of 'bad faith' is made, then the district court must proceed to exercise its discretion either in favor of or against the successful party who seeks fees." *Ibid.*

Here, Plaintiffs contend that Defendants acted vexatiously prior to the litigation in passing the Act in the first instance. I do not find such conduct to fall within the commonly accepted legal understanding of vexatious conduct, and even if it did, Defendants have consistently maintained throughout the litigation that Defendants did not intend to enforce the Act in the manner described by the Plaintiffs as evidencing "antipathy" towards licensed hunters or leading to the "obstruction" of legitimate conservation purposes. The final consent Order and Judgment reflect Defendants' understanding of the limited applicability of the Act. Plaintiffs, however, further contend that Defendants acted in bad faith by failing to immediately concede preemption 1) after receiving Plaintiffs' letter to Governor Christie; 2) after receiving Plaintiffs' 60-day notice of intent to sue; and 3) after the initial conference with the Court in this case.

Failing to immediately concede to Plaintiffs' demands in this case clearly does not rise to the level of bad faith. There is no evidence that Defendants lacked a good faith basis to disagree with Plaintiffs' interpretation of the extent of preemption in this case, and, indeed, it is undisputed that the consent Order and Judgment entered on August 29 differs in its language from that proposed by Plaintiff on August 3. Renella Decl., ¶ 19. Accordingly, there are no grounds for the application of the bad faith exception in this case.[4]

The Third Circuit has explained that the common benefit doctrine from *Hall* also establishes a multi-part test for the exercise of the Court's equitable authority. "This test entails satisfying three distinct elements: (1) the plaintiff must confer a substantial benefit; (2) to members of an ascertainable class; and (3) the court must ensure that the costs are proportionally spread among that class." *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 145 (3d Cir. 1998) (citation omitted). "Because this test may be read literally to include every lawsuit against any institutional defendant, [the Third Circuit] ha[s] refined this language further." *Ibid.* Courts in the Third Circuit thus also inquire "(1) whether the benefits may be traced with some accuracy; (2) whether the class of beneficiaries are readily identifiable; and, (3) whether there is a reasonable basis for confidence that the costs may be shifted with some precision to those benefitting." *Ibid.*

---

[4] Plaintiffs' allegations of bad faith in this case are particularly surprising given the history of negotiations between the parties concerning the consent Order and Judgment. Plaintiffs agreed to forgo a fee motion in order to expedite resolution of the matter as recently as during or shortly after the parties' August 4, 2016 telephone conference. Jackson Decl., ¶ 13. The parties were in fact able to reach agreement on a consent order just twenty days later on August 24, 2016. Renella Decl., ¶ 19. In the interim, the only work by Plaintiffs' counsel not related to the actual negotiation and drafting of the consent order itself, entailed finishing the drafting of a fifteen-page reply brief, due August 8. The completion of drafting a brief alone would not seem to have substantially changed the position of the parties between August 4 and August 24, so as to merit so substantial a change in Plaintiffs' position on attorneys' fees.

Here, granting that Plaintiffs have secured a substantial benefit to at least some citizens of the State of New Jersey, the Court nevertheless finds that Plaintiffs' have not identified a readily ascertainable class of beneficiaries. "[L]awful hunters and related businesses" are not a readily identifiable group, and indeed Plaintiff has provided no evidence or exhibits permitting the Court to make such a determination. Plaintiff's Moving Brief, 12. More importantly, the court has no reasonable basis for confidence that the costs of the litigation may be shifted with some precision to the alleged beneficiaries, such as they are. On the contrary, an award of attorneys' fees in this case would draw upon the State Treasury, spreading the costs to all citizens of the State of New Jersey, without regard to the benefit or lack thereof received by those citizens as a result of Plaintiffs' action; the benefits of which clearly and admittedly accrued primarily to African big game hunters and their associates. Accordingly, as this Court cannot possibly ensure that the costs of this litigation would be spread proportionally among the beneficiaries of this action in the event of an award of attorneys' fees to Plaintiffs, the common benefit doctrine does not provide a basis for the exercise of the Court's equitable powers in this case.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees is denied.


Dated: _____4/25/2017_____          _____/s/ Freda L. Wolfson_____
                                                         The Honorable Freda L. Wolfson
                                                         United States District Judge